In the Matter of SAMUEL L. RUBIN, Respondent, against J. EDWARD CONWAY et al., Constituting the Civil Service Commission of the State of New York, Appellants.

Third Department, May 5, 1948.

*H. Eliot Kaplan,* attorney for respondent.

*Nathaniel L. Goldstein, Attorney-General,* for appellants.

DEYO, J. The petitioner, a patrolman in the Police Department of the Village of Ossining, New York, since January 5, 1936, passed a promotion examination for the position of sergeant, and was placed on the eligible list promulgated for that purpose, in the order of his rating upon such examination. It is his contention that he is entitled to be advanced on said list and be given veteran's preference in certification for appointment therefrom, upon the basis of his service as a temporary member of the United States Coast Guard Reserve during the war.

On October 9, 1942, petitioner enrolled as a chief boatswain's mate (temporary), for the duration of the war. As such, he was subject to part time duty, not to exceed four days each month, without pay. While on active duty he was entitled to subsistence and was vested with the same rights as a regular member of the Coast Guard Reserve. He served at different bases and stations in and around New York City, and on board coast guard vessels, until his disenrollment on September 30, 1945. He received various citations for meritorious service and was promoted to the rank of ensign. Throughout this period he continued his civil pursuits and remained at all times subject to the Selective Training and Service Act of 1940 (U. S. Code, tit. 50, Appendix, § 301 *et seq.*).

Section 6 of article V of the State Constitution (effective January 1, 1946) provides in part that, " * * * any member of the armed forces of the United States who served therein in time of war, * * * " shall be entitled to a preference in

appointment and promotion. The implementing legislation embodied in paragraph (a) of subdivision 2 of section 21 of the Civil Service Law declares that it was the purpose and intent of the constitutional proviso to grant a preference in favor of veterans over nonveterans, and defines a veteran as " *   *   * a member of the armed forces of the United States who served therein in time of war,   *   *   *."

The sole question presented is whether or not the petitioner's service was such as to bring him within the scope of these constitutional and statutory provisions. A literal construction of the provisions justifies the affirmative answer which the Special Term has given. However, such .construction ignores entirely the purpose and obvious intent of both the resolution and the legislation. Any preference is of course repugnant to the theory of civil service. In the case of veterans, it is justified equitably and morally by the sacrifice and disruption of normal civil life which accompanied full time military service. No such justification exists in the case of those who, like the petitioner, gave only temporary, intermittent service on a basis which left their civilian lives and pursuits practically unaltered. The preference of those who " served " in time of war was intended only for the benefit of those whose whole time and effort were required by or rendered available to the armed forces.

The Special Term places considerable reliance upon *Mitchell v. Cohen* (160 F. 2d 915) which had adopted a literal construction of similar provisions of the Federal Veterans' Preference Act of 1944 (U. S. Code, tit. 5, § 851 *et seq.*), in relation to temporary members of the Coast Guard Reserve. Subsequently, however, that decision was reversed by the United States Supreme Court (333 U. S. 411), and a specific determination made that a temporary member of a coast guard reserve serving as the petitioner herein served, without pay and without interruption of his civilian pursuits, was not entitled to a preference. The pertinent portion of the Federal act grants preferences in governmental employment to " *   *   * those ex-servicemen and women who have served on active duty in any branch of the armed forces of the United States *   *   *." Although the Federal and State provisions in this regard are dissimilar as to phraseology, it can scarcely be argued that they differed in purpose and intent. The reasoning behind the United States Supreme Court decision is equally applicable to the case at bar and highly persuasive in its determination. That court pointed out that the term

" exserviceman " had no precise definition, and found it necessary to construe it in the light of its context and the purpose for which it was inserted in the section. So must we construe the phrase " member of the armed forces," which, if not synonymous with " exserviceman," at least constitutes a similar categorical designation for that group of military personnel who " served " in time of war.

The United States Supreme Court went on to say (pp. 419–420): " Throughout the legislative reports and debates leading to the birth of this statute is evident a consistent desire to help only those who had sacrificed their normal pursuits and surroundings to aid in the struggle to which this nation had dedicated itself. It was the veterans or ex-servicemen who had been completely divorced from their civilian employment by reason of their full-time service with the armed forces who were the objects of Congressional solicitude. Reemployment and rehabilitation were considered to be necessary only as to them.

" There is nothing to indicate that the legislative mind in this instance was directed toward granting special benefits or rewards to those who performed military service without interference with their normal employment and mode of life. As to them, assistance in reemployment and rehabilitation was thought unnecessary. Their civilian employment status remained unchanged by reason of their military service. And since their civilian life was substantially unaltered, there was no problem of aiding their readjustment back to such a life. Indeed, to have given them preference rights solely because of their part-time military service would have been inconsistent with the professed aims of the statutory framers. Such preference would have diluted the benefits conferred on those ex-servicemen who have made full-scale sacrifices; and it would have been inequitable to the many civilians who also had participated voluntarily in essential war and defense activities but who had not been directly connected with a branch of the armed forces."

Although " legislative reports and debates " are not available to us, their absence can hardly constitute a valid reason for assuming that the Legislature was activated by any different motives or purposes than was the Congress. The fact that the constitutional amendment of 1946 was couched in somewhat broader and more inclusive language than the previous proviso is not indicative of any intention to grant civil service preferences to those whose military activities were voluntary and intermittent, requiring less than their full time and effort.

The order should be reversed, on the law and facts, and the petition dismissed on the merits, without costs.

HEFFERNAN, FOSTER and RUSSELL, JJ., concur with DEYO, J.; HILL, P. J., dissents, in the following memorandum: The language of section 6 of article V of the State Constitution is clear and unambiguous. It entitles the petitioner-respondent to the relief which he sought. Unless the context suggests otherwise, the words used in a constitutional enactment should be given their natural, obvious and ordinary meaning. (*Browne* v. *City of New York*, 241 N. Y. 96.) The object of construction as applied to a written constitution is to give effect to the intent of the people in adopting it, and this intent is to be found in the instrument itself unless the words or expressions are ambiguous. (1 Cooley's Constitutional Limitations [8th ed.], pp. 124–126; *Judd* v. *Board of Education*, 278 N. Y. 200, 211.) In construing a constitution we should remember that it is the fundamental law of a State " it is a constitution we are expounding " (*McCulloch* v. *Maryland*, 4 Wheat. [U. S.] 316). I vote to affirm.

Order reversed, on the law and facts, and petition dismissed on the merits, without costs.