Burke, J.
At issue on this appeal is the right of honorably discharged members of the reserve components of the various branches of the armed forces, who served therein during time of war, to veterans’ preference credits on civil service examinations pursuant to article V (§6) of the State Constitution and section 85 of the Civil Service Law. While this question was previously resolved in favor of the reservists in Matter of Sullivan v. Hoberman (34 A D 2d 6, affd. no opn. 28 N Y 2d 667), which purportedly accorded reservists “ membership ” status in the armed forces of the United States thus entitling them, upon meeting the other qualifications, to section 85 preferences, the apparent failure of the Sullivan courts to take cognizance of the definition of a “ member of the armed forces ” set forth in section 13-a of the General Construction Law has resulted in various interpretations of the preference provisions (compare Matter of Rahill v. Bronstein, 40 A D 2d 636, with Matter of Loughran v. Bronstein, N. Y. L. J., Jan. 2, 1973, p. 2, col. 3 [Sup. Ct., New York County, Culkin, J.], and Matter of Sloane v. Willis, 40 A D 2d 1016, mot. for lv. to app. den. 32 N Y 2d 609; see, also, 1971 Opns. Atty. Gen. 14).[1] We take this opportunity to reconsider the issue.
On February 28, 1970, petitioners, members of the New York City Police Department, took and passed promotional examination number 9580 for advancement to the position of Lieutenant. Each having been an honorably discharged member of a reserve component of one of the various branches of the armed forces, who served therein during time of war,[2] * petitioners applied for *420 and received veterans ’ preference credits pursuant to section 85 of the Civil Service Law.[3] On the basis of the preference credits, petitioners were so placed on the eligible list that they were soon promoted to the rank of Lieutenant. Thereafter, the respondents determined that, as reservists with no active duty other than for training, petitioners were ineligible for veterans’ preferences, and notified them that their credits were disallowed, their certifications revoked, and their ranks reduced to Sergeant (pursuant to rule 4.7.6 of the Rules of the New York City Civil Service Commission). Petitioners then commenced this article 78 proceeding seeking to annul that determination as being arbitrary, capricious and contrary to law.
In granting the petition and annulling the respondents ’ determination disallowing the petitioners veterans’ preference credits, Special Term relied upon Matter of Sullivan v. Hoberman (34 A D 2d 6, affd. 28 N Y 2d 667, supra), wherein a reservist, injured while on two weeks’ active duty for training, was held to be a “ member of the armed forces of the United States ’ ’ within the meaning of article V (§6). Constrained by the identity of issue, Special Term concluded that the respondents herein erred in finding the petitioners ’ service in the reserves to be outside the scope of the preference provisions, stating: “ In Matter of Sullivan v. Hoberman (34 A D 2d 6, affd. 28 N Y 2d 667) the Appellate Division held that ‘ The armed forces are constituted by statute. There is a statutory provision for the Army Reserve ([34 A D 2d, at] p. 9) * * * Neither the constitution nor the Civil Service Law requires an evaluation of the merit, length or place of the service. That the service was not at the front is happenstance. The preference is based on the risk or exposure, and not the type of duration of service ([34 A D 2d, at] p. 10) * * * Courts are reluctant to import into the Constitution that which is not there ’ (People ex rel. Gilbert v. Wemple, 125 N. Y. 485, 489). ‘Where, as here, the language *421 of the Constitution admittedly, literally, brings petitioners within its scope, there is no occasion to search beyond the Constitution that which is not there ’ (People ex rel. Gilbert v. 3 N Y 2d 686, 689) ([34 A D 2d, at] p. 9).”
The Appellate Division, however, in a unanimous opinion, reversed the judgment and dismissed the petition, proffering a dual rationale, the first segment of which superimposed upon Sullivan the additional requirement that reservists have served on active duty, other than active duty for training, in order to qualify for 1 ‘ membership in the armed forces of the United States ” within the meaning of article V (§ 6) and section 85 of the Civil Service Law. Citing section 13-a of the General Construction Law—which was neither raised nor considered in Sullivan — the court simply noted that none of the instant petitioners had any full-time active duty, and that the annual training duty which reservists undergo 1 ‘ is not considered * * * active duty in the armed forces ” (40 A D 2d 637). Moreover, the court added, none of the petitioners met the ‘ ‘ Sullivan specifications ” since their reserve service allegedly occurred outside ‘ ‘ a section 85 time of war ’ ’. On the record before us, this latter conclusion has no basis in fact (see n. 3, p. 420).
On appeal, petitioners rest upon the rationale of Matter of Sullivan v. Hoberman, and properly argue that under that case, they, as honorably discharged ‘ ‘ members of the armed f orces of the United States ”, who served therein during time of war, are entitled to preference credits under section 85 of the Civil Service Law. While we find merit in that contention, an examination of the history and policy underlying the preference provisions leads us to the conclusion that Sullivan overextended the scope of the preference provisions, which should, as the Appellate Division here noted, be limited to those whose wartime service was ‘ ‘ full-time active duty ’ ’. To the extent, therefore, that the term ‘ ‘ member of the armed forces ’ ’ must be given a more restrictive interpretation, Sullivan must be overruled.
Article V (§. 6) of the State Constitution provides that appointments and promotions within the civil service system in this State shall be by competitive examination. By way of an exception to that rule, the same section provides, however, that: “ any member of the armed forces of the United States *422 who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, shall be entitled to receive five points additional credit in a competitive examination for original appointment and two and one-half points additional credit in an examination for promotion nr, if such member was disabled in the actual performance of duty in any war, is receiving disability payments therefor from the United States veterans administration, and his disability is certified by such administration to be in existence at the time of his application for appointment or promotion, he shall be entitled to receive ten points additional credit in a competitive examination for original appointment and five points additional credit in an examination for promotion.” (N. Y. Const., art. V, § 6.)
Section 85 of the Civil Service Law then gives effect to the article V (§6) exception, defining veteran (§ 85, subd. 1, par. [a])[4] and disabled veteran (§ 85, subd. 1, par. [b])[5] as provided in the Constitution, and providing for the appropriate preference credits (§ 85, subd 2, par. [a], els. [1] & [2]).
The “ veteran’s preference ” has been a constitutionally prescribed part of our civil service system since post-Civil-War days (N. Y. Const. [1894], art, V, § 9; see, also, Matter of Barthelmess v. Cukor, 231 N. Y. 435; Matter of Keymer, 148 N. Y. 219). Justified as a discharge of our “ debt of gratitude ” for the sacrifices of those who served our country during time of war, this exception to the constitutional mandate that civil ser *423 vice placement and advancement be by competitive examination has regularly withstood constitutional attack on equal protection grounds (Matter of Bateman v. Marsh, 188 Misc. 189, affd. 271 App. Div. 813, affd. 296 N. Y. 849; Matter of Potts v. Kaplan, 264 N. Y. 110; Matter of Gianatasio v. Kaplan, 142 Misc. 611, affd. 257 N. Y. 531, app. dsmd. 284 U. S. 595; Matter of Barthelmess v. Cukor, 231 N. Y. 435, supra). Historically, however, the constitutionality of the preference provisions has been insured by a consistently restrictive construction, comporting as fully as possible with the competitive injunction of article V (§ 6) (see Matter of Rubin v. Conway, 273 App. Div. 559, affd. 298 N. Y. 711; Matter of Barthelmess v. Cukor, supra; Matter of Keymer, supra).
In 1948, the courts, in Matter of Rubin v. Conway (273 App. Div. 559, affd. 298 N. Y. 711, supra), had occasion to construe the preference provisions of article Y (§ 6)[6] in terms of the underlying legislative intent. Factually, the case involved a claim for preference credits on the basis of the petitioner’s temporary membership in the United States Coast Guard Reserve. The Appellate Division, culling its rationale from the United States Supreme Court’s construction of similar provisions of the Federal Veteran’s Preference Act of 1944 (Mitchell v. Cohen, 333 U. S. 411), concluded that while a literal reading of the provisions might bring the temporary reservists within their coverage (as it would these petitioners) such a reading would ignore the obvious intent of the provisions. Noting that “ [a]ny preference is of course repugnant to the theory of civil service ’ ’, the court held that only in the case of ‘ ‘ full time military service ”, in time of war, is such a preference justified. There, “it is justified equitably and morally by the sacrifice and disruption of normal civil life which accompanied full time military service” (273 App. Div., at p. 561). In thus delimiting the constitutional phrase ‘ ‘ members of the armed forces ” to those who served full-time active duty, the Appellate Division quoted as follows from the United States Supreme Court’s Mitchell decision: “ ‘ Throughout the legislative reports and debates leading to the birth of this statute is evident a consistent *424 desire to help only those who had sacrificed their normal pursuits and surroundings to aid in the struggle to which this nation had dedicated itself. It was the veterans or ex-servicemen who had been completely divorced from their civilian employment by reason of their full-time service with the armed forces who were. the objects of Congressional solicitude. Reemployment and rehabilitation were considered to be necessary only as to them. There is nothing to indicate that the legislative mind in this instance was directed toward granting special benefits or rewards to those who performed military service without interference with their normal employment and mode of life. As to them, assistance in reemployment and rehabilitation was thought unnecessary. Their civilian employment status remained unchanged by reason of their military service. And since their civilian life was substantially unaltered, there was no problem of aiding their readjustment back to such a life. Indeed, to have given them preference rights solely because of their part-time military service would have been inconsistent with the professed aims of the statutory framers. Such preference would have diluted the benefits conferred on those ex-servicemen who have made full-scale sacrifices; and it would have been inequitable to the many civilians who also had participated voluntarily in essential war and defense activities but who had not been directly connected with a branch of the armed forces.’ ” (273 App. Div., at p. 562.) Quite clearly, the reasoning applied to the temporary reservists in Rubin is equally applicable to regular reservists under consideration here.[7]
Tn deciding Matter of Sullivan v. Hoberman (34 A D 2d 6, affd. 28 N Y 2d 667, supra), which granted to reservists—who are not torn away from their homes "and jobs by full-time active duty — preference credits in civil service examinations, the courts overlooked not only the General Construction Law but, more importantly, the constitutional construction given these very preference provisions in Matter of Rubin v. Conway (supra). In doing so, preference credits have been extended to a now privileged class of employees—wartime reservists — who were not the intended beneficiaries of the exception to the *425 article V constitutional directive that civil service positions be competitive. This extension not only dilutes the benefit to those veterans who, by virtue of their sacrifices, are entitled to such preferential treatment, but it creates a class—wartime reservists—who are accorded preferential treatment which is unjustified by the ‘ ‘ debt of gratitude ’ ’ which underlies the preferences given full-time, active-duty war veterans (see Matter of Bateman v. Marsh, 188 Misc. 189, affd. 271 App. Div. 813, affd. 296 N. Y. 849, supra).
We find unconvincing the argument, first advanced in Sullivan, that the constitutional term ‘ ‘ members of the armed forces ’ ’ must be given its broadest effect so as to include reservists (34 A D 2d, at p. 9). The thrust of article V (§6) of the Constitution is that the civil service system is to be competitive. The term “ members of the armed forces ” is included in that section only by way of defining an exception to the general requirement that appointments and promotions be by competitive examination. As an exception to a constitutional mandate, the term 1 ‘ members of the armed forces ’ ’ should be given the narrowest interpretation consistent with the intent of the framers. This is particularly true here, where the provision for a preference is, by definition, repugnant to the competitive scheme of article V (§ 6) (see Matter of Barthelmess v. Cukor, 231 N. Y. 435, supra [opn. per Cardozo, J.]).
Accordingly, Matter of Sullivan v. Hoberman (supra) is overruled, and the order appealed from is affirmed.
Chief Judge Fuld and Judges Breitel, Jasen, Gabrielli, Jones and Wachtler concur.
Order affirmed, without costs.

. After noting that “Matter of Sullivan v. Hoberman * * appears not to have considered § 13-a of the General Construction Law ”, the Attorney-General concluded that “ a member of a reserve component of the Armed Forces of the United States may not be accorded veterans’ preference unless he has served on a full-time active duty basis other than active duty for training purposes” (1971 Opns. Atty. Gen., at pp. 14-15).

. Section 85 (subd. 1, par. [e]) of the Civil Service Law defines “ time of war” to include the periods June 26, 1950 to July 27, 1953 and January 1, 1963 to February 1, 1973. Respondents’ own brief indicates each of these petitioners was a member of the reserves during those statutorily defined periods of war (see Respondent Brief, pp. 5-7). Rahill was discharged from the reserves October 31, 1965; O’Donnell entered February 3, 1953; Jenkins entered the reserves June 30,1949 and was discharged March 19,1954; Mulderrig entered April 18, 1953; and Cass was discharged September 6, 1968.

. By virtue of their membership in the reserves all the petitioners claimed at least nondisabled veterans’ preference credits. Petitioner Rahill claimed the additional credits as a disabled veteran under section 85 (subd. 1, par. [b] and subd. 2, par. [a], cl. [1]) predicated upon a 10% service related disability. We can find no evidence in the record, however, which would indicate that Rahill’s injury occurred during “time of war”. It may well have occurred during his active duty prior to 1963.

. Section 85 (subd. 1) “Definitions, (a) .The terms 1 veteran’ and ‘non-disabled veteran ’ mean a member of the armed forces of the United States who served therein in time of war. who was honorably discharged or released under honorable circumstances from such service, who was a resident of this state at the time of entrance into the armed forces of the United States and who is a citizen and resident thereof at the time of application for appointment or promotion or at the time of retention, as the case may be.”

. Section 85 (subd. 1, par. [b]) “ The term ‘ disabled veteran ’ means a veteran who is certified by the United State? veterans’ administration as entitled to receive disability payments upon the certification of such veterans’ administration for a disability incurred by him in time of war and in existence at the time of application for appointment or promotion or at the time of retention, as the case may be.”

. Matter of Rubin actually construed the predecessor to the present article V (§6) (adopted 1945; repealed 1949), the provisions of which were substantially identical.

. See, e.g., General Construction Law (§ 13-a, added L. 1956, ch. 694, § 1, eft. April 16, 1956). See, also, Military Law (§ 1, subd. 9) which defines “in the armed forces of the United States” as “full time duty in the army” etc.