*440 OPINION OF THE COURT
Kaye, J.
On March 24,1970, respondent police officers, as Armed Forces reservists, were summoned to active duty to help maintain mail service during a postal workers’ strike, but released a few hours later because of their essential civilian occupations. Based solely on that service, they claimed veterans’ preference credits, which would place them ahead of other officers who achieved higher scores on police department promotional examinations. These related appeals raise two questions: first, whether appellant, the city Personnel Director,[1] has standing to challenge the decisions of respondent City Civil Service Commission awarding the preference credits and second, assuming the challenge is procedurally proper, whether on the merits the commission’s decisions should be sustained.
 Each case before us had its genesis in disallowance of the claimed veterans’ preference credits by appellant on the ground that, while respondent police officers were called for active duty, they were dismissed without having been used. On administrative appeal by the officers, respondent commission reversed and granted the applications, relying on an opinion of the Supreme Court, New York County, in Stendrini v D'Ambrose (NYU, Dec. 5, 1977, p 11, col 2) that reservists called for active duty during the postal strike were entitled to veterans’ preference credits without any minimum period of service. Appellant then brought article 78 proceedings challenging the commission’s decisions. Special Term dismissed the petitions, holding that appellant lacked standing to seek judicial review and that on the strength of Stendrini the commission’s decisions had rational bases and the Appellate Division affirmed, without opinion. We now reverse the orders below on both grounds. Appellant has standing to maintain these article 78 proceedings against respondent commission; the commission’s decisions awarding veterans’ preference credits to respondent police officers should have been annulled.
*441 I
The conclusion that appellant lacked standing rested on the assumptions that this was merely an intra-agency dispute, that this court’s decisions setting forth the basis for standing apply only to private parties seeking review of agency action taken against them, and that appellant has no standing to sue in the absence of an express legislative grant of authority. These premises are incorrect.
Appellant’s challenge is not a mere intra-agency dispute. Under the legislative scheme for administering the civil service laws, it is appellant who is assigned the power and responsibility to set civil service policy in New York City, to enforce the civil service laws, and to assure the legality of appointments. Respondent commission has none of these duties, but instead functions, in prescribed circumstances, as a board to review determinations by appellant and by other agency heads.
Subdivision 4 of section 15 of the Civil Service Law empowers New York City to administer the provisions of the Civil Service Law through whatever form of administration it chooses to prescribe in its city charter. The New York City Charter provides that the Personnel Director “shall have all the powers and duties of a municipal civil service commission provided in the civil service law or in any other statute or local law” (NY City Charter, § 811). Among appellant’s responsibilities are to “preserve and promote merit and fitness in city employment” (NY City Charter, § 810, subd a), to establish and determine the appropriateness of eligible lists for civil service appointments (NY City Charter, § 813, subd a, pars [4], [5]), and to promulgate rules and regulations in furtherance of and consistent with the Civil Service Law (NY City Charter, § 813, subd c). In addition, in the exercise of the powers of a municipal civil service commission, appellant has the powers and duties to administer the provisions of the Civil Service Law (Civil Service Law, § 17), to prescribe and enforce rules for implementing the provisions of the Civil Service Law and section 6 of article V of the Constitution (Civil Service Law, § 20, subd 1), to investigate the qualifications of applicants both before and after appointment and to revoke appointments where there is a finding of any *442 illegality in the appointment (Civil Service Law, § 50, subd 4), and to maintain actions in the Supreme Court to enjoin any violation of the Civil Service Law or rules and for such incidental relief as may be necessary (Civil Service Law, § 102, subd 3).
Respondent commission, by contrast, has not been delegated the general powers and responsibilities of a municipal civil service commission. The only powers reserved to respondent are those of an appeals board: to hear and decide appeals by persons aggrieved by appellant’s determinations (NY City Charter, § 812, subd c), and to hear and decide appeals in disciplinary proceedings (Civil Service Law, § 76).
It is thus clear that appellant, not respondent commission, has both policy-making authority and functional responsibility for civil service matters in New York City. Appellant is a municipal body separate from respondent commission. (Matter of Department of Personnel v City Civ. Serv. Comm., 94 AD2d 5, 8.) This is not a situation where appellant would lack standing to sue because the Legislature intended that one agency, as a mere agent of another, would be bound by the latter’s determinations. (See Matter of Beaudoin v Toia, 45 NY2d 343; Matter of Clemente v Fahey, 45 NY2d 756.) The fact that respondent may serve as an appeals board for appellant’s determinations does not preclude appellant from seeking review of those decisions by which appellant is aggrieved. (Matter of Flacke v Freshwater Wetlands Appeals Bd., 53 NY2d 537, 540.)
In Matter of Dairylea Coop. v Walkley (38 NY2d 6, 8-11) and Matter of Bradford Cent. School Dist. v Ambach (56 NY2d 158, 163-164), we set forth three criteria for standing. Special Term refused to apply the factors identified in Dairylea because it believed they were limited to “private parties seeking review of agency action taken against them.” Our subsequent decision in Bradford shows this belief was mistaken. Whether the challenge is raised by a private entity or, as here, by a governmental officer or agency with policy-making authority and functional responsibility in the subject area sought to be reviewed, the factors to be applied in determining standing to seek review of an administrative decision are the same: (1) the *443 interest asserted must be arguably within the zone of interest to be protected by the statutory or constitutional provisions sought to be enforced; (2) the administrative decision for which review is sought must be shown to have a harmful effect upon the party asserting standing; and (3) there must be no clear legislative intent negating review. Appellant meets these criteria.
First, the very sections of the Civil Service Law and the New York City Charter which give appellant the power and responsibility to ensure that city personnel such as respondent police officers are appointed and promoted in accordance with a system of merit and fitness establish that appellant’s interest is within the zone of interest sought to be protected by the Civil Service Law. In Bradford, we held that a school board’s interest and responsibility for determining whether a teacher is properly certified was sufficient to fulfill the “zone of interest” test for standing to challenge the decision of the Commissioner of Education that overruled the school board’s determination and awarded certification to a teacher. (Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158, 163-164, supra.) Appellant’s interest is no less deserving of protection.
Second, respondent commission’s decisions have a harmful effect upon appellant. Those decisions requiring promotional preferences irrespective of length or type of service interfere with the authority and discretion given to appellant to enforce the Civil Service Law and, if allowed to remain in force, would result in a significant policy determination by one entity that is within the authority of another. This is sufficient injury to justify standing. (Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158, 164, supra; Matter of Department of Personnel v City Civ. Serv. Comm., 94 AD2d 5, 8, supra.)
Third, there is no clear legislative intent negating review.[2] On the contrary, authority for appellant to seek judicial review of the commission’s decisions regarding preference credits may be implied from its statutory powers and responsibilities in this area. (See Matter of Flacke v *444 Freshwater Wetlands Appeals Bd., 53 NY2d 537, 542, supra.) Appellant has both authority and responsibility to establish and determine the appropriateness of eligible lists for civil service appointments, including promotion, to revoke appointments where such were the result of illegality or irregularity, and to maintain actions for injunctive and other incidental relief against violations of the Civil Service Law. If, as appellant suggests, respondent commission’s decisions and awards were made in derogation of the requirements of the Civil Service Law, the promotions of respondent police officers are exactly the sort of illegal or irregular appointments appellant has the power and duty to revoke. Appellant’s authority to commence an article 78 proceeding is a necessary implication from its power and responsibility to police the legality and regularity of civil service appointments. “It is the duty of the appropriate administrative officers of the State or its civil divisions to discontinue an illegal employment when they note its illegality, and if rights based upon such employment are asserted in the courts, the legality of the appointment should not go unchallenged by public officers”. (Palmer v Board of Educ., 276 NY 222, 226.)
Matter of Pooler v Public Serv. Comm,. (58 AD2d 940, affd 43 NY2d 750) requires no different result. In Pooler the question presented was whether the State Consumer Protection Board had standing to bring an article 78 proceeding to review an order of the Public Service Commission in a rate case. Unlike appellant, the Consumer Protection Board is not a separate governmental body charged with the enforcement and administration of a body of laws and regulations, but rather a group charged with co-ordinating activities of State agencies performing consumer protection functions and reporting to the Governor and Legislature, with statutory power to “initiate, intervene in, or participate in any proceedings before the public service commission”. (Executive Law, § 553, subd 2, par c.) In denying the right to seek judicial review of a Public Service Commission order, the Appellate Division in Pooler concluded that the Consumer Protection Board did not have “the status of a separate legal being with the right to initiate litigation in pursuit of its purposes,” and that the *445 authority to seek such review was not a “necessary implication from those powers which the Legislature saw fit to set forth” (58 AD2d 940, supra), and we affirmed on the Appellate Division memorandum (43 NY2d 750, supra).
But Pooler does not require that in every instance there be express legislative authority to sue before a public body may seek judicial review of administrative actions. Given the limited statutory authority of the Consumer Protection Board, the board in Pooler did not have functional responsibility within the zone of interest to be protected and, with respect to actions of the Public Service Commission in particular, the Legislature expressly restricted the board’s role to agency proceedings. Here there is no corresponding lack of identifiable interest, and no legislative intent to limit appellant’s role to the administrative arena.
II
Having determined that appellant has standing to bring these article 78 proceedings, we turn to the merits of the dispute.
Respondent police officers sought veterans’ credits pursuant to the New York State Constitution and the Civil Service Law. Section 6 of article V of the Constitution provides: “Appointments and promotions in the civil service * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive; provided, however, that any member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, shall be entitled to receive * * * two and one-half points additional credit in an examination for promotion”. This constitutional provision is given effect by section 85 of the Civil Service Law. The term “veteran” is defined as “a member of the armed forces of the United States who served therein in time of war”. (Civil Service Law, § 85, subd 1, par [a].) The terms “time of war” and “armed forces of the United States” are in turn defined as follows:
*446 “The term ‘time of war’ shall include the following wars for the periods herein set forth:
* * *
“Hostilities participated in by the military forces of the United States, from the first day of January, nineteen hundred sixty-three to the twenty-ninth day of March, nineteen hundred seventy-three.” (Civil Service Law, § 85, subd 1, par [c], cl [4].)
“ ‘Armed forces of the United States’ means the army, navy, marine corps, air force and coast guard, including all components thereof, and the national guard when in the service of the United States pursuant to call as provided by law. Pursuant to this definition no person shall be considered a member or veteran of the armed forces of the United States unless his or her service therein is or was on a full-time active duty basis, other than active duty for training.” (General Construction Law, § 13-a.)
In Stendrini v D Ambrose (NYLJ, Dec. 5, 1977, p 11, col 2, supra) the court held that New York City police officers in the Armed Forces reserves who spent four days on active duty during the 1970 postal strike were entitled to veterans’ credits because of that service. The rationale for that decision was a literal reading of the statutes to mean that the officers’ service was “in time of war” because it occurred within the dates of the Vietnam hostilities set forth in the Civil Service Law, and that the service was “in the armed forces” because the General Construction Law imposes no minimum period of service as a requirement.
The question of entitlement to veterans’ credits of employees who, as here, rendered brief service during dates which coincidentally fell within a “time of war” was addressed in both Matter of Rubin v Conway (273 App Div 559, affd 298 NY 711), where a policeman on part-time duty as a reservist for up to four days per month between October, 1942 and September, 1945 was denied veterans’ credits, and Matter of Rahill v Bronstein (32 NY2d 417), where veterans’ credits were denied to policemen who, as reservists, saw active duty in the Armed Forces for training purposes during a “time of war” specified in section 85 of the Civil Service Law. In those decisions it was held that *447 the term “member of the armed forces” must be given a restrictive interpretation limited to those whose war-time service was significant, full-time duty. That rationale is dispositive of the present appeals.
Appointments and promotions by merit and fitness based on competitive examination are at the heart of the civil service system. Preferences such as veterans’ credits are antithetical to that competitive merit system. The constitutionality of such preferences has been insured only by a consistently restrictive construction, complying as fully as possible with the injunction of the Constitution that appointments and promotions be based on merit and fitness. (Matter of Rahill v Bronstein, 32 NY2d 417, 423, supra; Matter of Barthelmess v Cukor, 231 NY 435.) In the case of veterans, preferences are viewed as society’s expression of gratitude for their sacrifice and for the disruption of their lives that accompanies full-time military service. (Matter of Rubin v Conway, 273 App Div 559, 561, affd 298 NY 711, supra.) The intent of the Legislature in providing for veterans’ credits to “members of the armed forces” was to extend those preferences to persons who had been divorced from their civilian employment by reason of their full-time service, where re-employment and rehabilitation were considered necessary. (.Matter of Rahill v Bronstein, 32 NY2d 417, 424, supra.)
There was no intent to grant promotional preference to persons whose military service was performed without any interference with their normal employment or mode of life. To extend veterans’ credits to such persons would dilute the reward conferred on ex-servicemen who made full-scale sacrifices, at the direct expense of others who have demonstrated higher ability on competitive examinations.[3] Such an inequitable result would create “a class * * * accorded preferential treatment which is unjustified by the ‘debt of gratitude’ which underlies the preferences given full-time, active-duty war veterans.” (Matter of Rahill v Bronstein, 32 NY2d 417, 425, supra.)
Respondent police officers, who were called up for assistance during a postal strike which fortuitously occurred *448 during a “time of war,” were not divorced from their civilian lives. Indeed, they were dismissed within a matter of hours precisely so that their civilian occupations would suffer no disruption. In such circumstances, no justification exists for an award of veterans’ preference credits. The decisions of respondent commission to reverse the determinations of appellant and grant veterans’ credits to respondent police officers were, therefore, based on a misapprehension of legislative intent and a disregard of the prior rulings of this court. Stendrini v D Ambrose (supra), which is inconsistent with that intent and those rulings, cannot serve as a rational basis for the action taken by respondent commission, and should not be followed. Where, as here, the initial administrative determinations are based on an accurate interpretation of legislative intent, they should not be set aside. The decisions made by respondent commission should therefore have been annulled on appellant’s petitions.
In summary, we hold today that under section 6 of article V of the Constitution and section 85 of the Civil Service Law, veterans’ credits should be awarded for civil service appointments and promotions only where the applicant’s service as a “member of the armed forces” during a “time of war” was on a full-time basis evidencing a sacrifice in the form of disruption of civilian life and divorce from civilian occupation. It is not enough that an applicant’s service fall within the literal definitions of “member of the armed forces” and “time of war” if that service did not significantly interfere with the applicant’s normal employment and way of life. To the extent that Matter of Silberglitt v McNamara (300 NY 465) may be read to suggest otherwise, that decision should not be followed.
Ill
Respondent Lombardi, who was initially granted veterans’ credits by appellant, makes the additional argument that appellant is barred from rescinding his credits and revoking his promotion under subdivision 4 of section 50 of the Civil Service Law and the doctrine of estoppel. This argument is unpersuasive. Respondent Lombardi received his promotion only as a result of the veterans’ credit awarded by respondent commission in violation of the *449 provisions of the Civil Service Law. The very language of subdivision 4 of section 50 of the Civil Service Law empowers appellant to revoke appointments or promotions where, as here, there is a finding of illegality, whether or not the facts upon which the illegality was based were known prior to the appointment or promotion. (See Matter of Wolff v Hodson, 285 NY 197, 202.) Furthermore, estoppel may not be applied to preclude a State or municipal agency from discharging its statutory responsibility. (Public Improvements v Board of Educ., 56 NY2d 850.) This is particularly true where, as here, the estoppel is sought to be applied to perpetuate an appointment based on a misreading of constitutional and statutory requirements. (Matter of McLaughlin v Berle, 71 AD2d 707, affd 51 NY2d 917; Matter of Hauben v Goldin, 74 AD2d 804.)
Accordingly, the orders of the Appellate Division should be reversed, with costs, appellant’s petitions should be granted, and the decisions of respondent commission should be annulled.

. While the City of New York is also an appellant, no separate argument is made on its behalf. “Appellant” throughout this opinion refers to the city Personnel Director.

. By contrast, the Legislature has specified that in disciplinary appeals the commission’s decisions are to be final and unreviewable. (Civil Service Law, § 76, subd 3; NY City Charter, § 812, subd c.)

. The veterans’ credits awarded to respondent Lombardi, for example, allowed him to move ahead of almost 950 other police officers who achieved higher scores on the promotional examination for sergeant.