OPINION OF THE COURT
Lewis R. Friedman, J.
In this action plaintiff seeks to enforce a memorandum of understanding (MOU) entered into by Governor Cuomo with Mayor Koch arising out of the Westway project. The instant motion raises a serious question of whether under the New York City Charter the Comptroller has standing to bring this action after the Corporation Counsel has refused to do so.
There is no dispute at this time about the facts necessary to place the legal questions in perspective. In 1981 pursuant to approval of the Federal Highway Administration (FHWA) the State condemned certain land owned by the City along the Hudson River waterfront to be used for the Westway project. The State paid $90 million for the property: $10 million from State funds and $80 million from Federal funds provided by the FHWA. The City commenced two actions in the Court of Claims seeking $300 million in additional consideration for the property. On September 25, 1985 Governor Cuomo and Mayor Koch requested that FHWA withdraw its approval of West-way. FHWA promptly complied. Pursuant to 23 USC § 103 (e) (4) (the Federal Aid-Highway Act) the State was required to repay the FHWA an amount equal to the amount of Federal funds expended to acquire property for Westway. However, if, within 10 years of the withdrawal of approval, the State filed a "waiver of payback” application, assuring that the property would be used for transportation purposes permissible under Federal law and the Secretary of Transportation approved that application, repayment of the funds would be forgiven.
The Governor and Mayor agreed to a MOU on May 25, 1988 to resolve the pending Court of Claims actions. The parties agreed that the State would make no further payments for the land, that the parties would share equally in the obligation to repay the Federal funds, and that they would mutually agree to any forgiveness from the Federal Government. The MOU was not effective without the Comptroller’s approval pursuant to New York City Charter § 93 (i); § 394 (c). Comptroller Goldin would not approve the MOU unless priority was given to the "waiver of payback” application, which involved the use of the land and scenic easements, and City payments could be delayed *469 until 30 days after the Secretary of Transportation ruled on the application. The Mayor and Governor agreed to the Comptroller’s terms; on June 20, 1989 the Comptroller approved the MOU. The Court of Claims actions were discontinued with prejudice. On July 28, 1989 the stipulation of settlement which incorporated the MOU was entered into, on the record in the Court of Claims. The Court of Claims Judge specifically stated that he did not approve the stipulation; he declined to enter the stipulation as a court order.
In July 1990 the New York State Department of Transportation (DOT) submitted a "waiver of payback” application, which the FHWA promptly rejected as inadequate. No further "waiver of payback” application was ever submitted. In early 1995 the Federal DOT advised the State that a "waiver of payback” application could be submitted no later than September 30, 1995. On July 26, 1995 the State DOT notified the FHWA that the State "desires to repay the Federal share, $80,127,450, of the Westway property using current bill credits”. The papers before the court do not reveal whether that State decision was made with the City’s approval, which was required by the MOU. Plaintiff, the Comptroller, did not approve a decision to modify the MOU. On August 2, 1995 the State DOT advised the Comptroller that the State would not submit a "waiver of payback” application, that it had decided to repay the Federal funds, and that it would withhold the City’s share, in excess of $40 million, from State transportation aid due to the City.
On September 12 the Comptroller requested the Corporation Counsel to bring an action against the State for failure to comply with the terms insisted on by the former Comptroller. The Corporation Counsel refused to commence suit or to authorize plaintiff to retain outside counsel to bring the action. Plaintiff then filed this action seeking a declaration that there was a breach of the MOU terms imposed by the Comptroller, an injunction against collecting funds from the City to pay the Federal Government, and an injunction compelling the State to comply with the Federal Aid Highway Law in the use of the land.
In the motion as originally filed the defendants contended that the City was a necessary party. This court’s interim order dated February 7, 1996 required plaintiff to add the City as a party. The City has now appeared, by the Corporation Counsel, and joins in the State defendants’ motion.
The portions of the motion that remain assert three grounds for dismissal: plaintiff lacks standing; the matter belongs in *470 the Court of Claims, not in this court; and equitable relief is not available.
There is no doubt that the Corporation Counsel is the City’s chief legal officer and has complete charge of the City’s legal affairs. Section 394 (a) of the New York City Charter provides that the Corporation Counsel "shall have charge and conduct * * * the law business of the city”. Section 395 generally precludes officials from retaining their own counsel on official matters with certain limited exceptions. The cases hold that any City official who seeks to sue must be represented by the Corporation Counsel and, if the Corporation Counsel refuses to sue, the official may not sue in its own name. In Matter of Abrams v Ronan (36 NY2d 714) the Court of Appeals held that the Bronx Borough President could not sue the directors of the Metropolitan Transportation Authority except in compliance with section 394 of the New York City Charter. Similarly in Lamberti v Metropolitan Transp. Auth. (170 AD2d 224, 225) the First Department held that the refusal of the Corporation Counsel to bring an action did not give the Borough President " 'implied authority’ ” to retain counsel and bring his own action. The generally recognized exception to the rule relegating all actions to the Corporation Counsel is where there is a "void in representation created by the Corporation Counsel’s disqualification from representation because of, for example, conflict of interest, fraud, collusion, corruption or incompetence”. (Lamberti v Metropolitan Transp. Auth., 170 AD2d, supra, at 225; Matter of Kay v Board of Higher Educ., 260 App Div 9, 12; cf., Matter of Kingsport Press v Board of Educ., 52 Misc 2d 276, 278.) This court notes that in both Matter of Abrams and Lamberti, the suits were in furtherance of the Borough Presidents’ interests in constituent services, not in enforcing a role central to their own office.
In this case the Corporation Counsel has filed an affidavit stating his belief of the reason for the Charter provision. "The City must present a unified legal position in relation to third parties. The Charter provision assigning the Corporation Counsel charge of the 'law business’ of the City ensures that the City is able to advance a coordinated position determined, ultimately, by a single attorney selected by the Mayor for that purpose.” (Crotty affidavit, Nov. 8, 1995, ¶5.)
Plaintiff contends that the Corporation Counsel misstates the litigation relationship between the independently elected Comptroller and the City’s chief legal officer. New York City Charter § 93 (i) gives the Comptroller the "power to settle and *471 adjust all claims in favor of or against the city”. In order to enforce that provision, the Corporation Counsel’s power is specifically limited by section 394 (c): "The corporation counsel shall not be empowered to compromise, settle or adjust any rights, claims, demands, or causes of action in favor of or against the city, and shall not permit, offer or confess judgment against the city, or. accept any offer of judgment in favor of the city without the previous approval of the comptroller.” Accordingly the Comptroller contends that his right to sue in the event there is a breach of a term in a settlement which the Comptroller has insisted upon is necessarily implied by his powers under the Charter.
State law has provisions similar to those in the Charter, which restrict agencies from acting except through the Attorney-General (see, Executive Law § 63 [8]). The cases have interpreted those provisions so as to permit a suit by a governmental agency in opposition to the position of the Attorney-General where the power to sue is "necessarily implied” from the powers granted to the officeholder. For example, in Regan v Cuomo (182 AD2d 1060) the Court held that the State Comptroller had the standing and capacity to sue to invalidate a statute which he believed created a State obligation in violation of the State Constitution. The Court noted that the powers of the Comptroller included the power of auditing all accounts of the State and auditing all vouchers for payment. That is, he had the power to insure that only proper expenses were paid. "The capacity * * * to sue in this case is necessarily implied from the powers granted plaintiff by the Legislature despite language in Executive Law § 63 limiting the right to sue to the Attorney-General” (at 1062). The courts have applied the "necessary implication” formulation in other settings. The State Consumer Protection Board, for example, did not meet the test in Matter of Pooler v Public Serv. Commn. (58 AD2d 940, affd on mem below 43 NY2d 750).
A similar analysis has led the Court of Appeals to hold that a Town Planning Board has the power to sue in its own name, despite the absence of authorizing legislation, where the power to retain counsel "is necessarily implied in order to enable the board to effect the purposes of its creation and to allow it to properly function”. (Cahn v Town of Huntington, 29 NY2d 451, 455; Matter of Fleischmann v Graves, 235 NY 84, 90-91; Matter of Hiscox v Holmes, 239 App Div 602.)
Recently the Court of Appeals in Community Bd. 7 v Schaffer (84 NY2d 148, 156) dealt with the question of whether a *472 New York City Community Board has the capacity to sue. The Court noted (at 156) that "the authority of a government agency to bring suit does not require 'that in every instance there be express legislative authority’ ([Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436,] 444-445).” The questions are whether the capacity to sue is a " 'necessary implication from [the agency’s] power * * * and responsibility]’ ” (Community Bd. 7 v Schaffer, 84 NY2d, at 156; Matter of City of New York v City Civ. Serv. Commn., 60 NY2d, at 444) and whether there is a legislative intent that would preclude that right. The Court held that there can be a necessary implication of the power to bring the claim "when the agency in question has 'functional responsibility within the zone of interest to be protected’ ” (Community Bd. 7 v Schaffer, 84 NY2d, at 156, quoting Matter of City of New York v City Civ. Serv. Commn., 60 NY2d, at 445).
The question here then becomes whether the Comptroller has the necessary "functional responsibility within the zone of interest to be protected”. The Charter, since the creation of the City of Greater New York, has had a provision that requires the Comptroller to authorize any settlements of suits for or against the City even though the Corporation Counsel has charge of the "law business” of the City (see, e.g., Greater NY Charter § 255 [1901]; L 1901, ch 466). In that context the Appellate Division in this Department in 1914 permitted the Comptroller to intervene in litigation where the Corporation Counsel had effectively confessed judgment by conceding the factual issues in the case without the Comptroller’s approval (Buck v City of New York, 214 App Div 629). The Court found that the Comptroller’s responsibility to pay the judgment that ensued gave him sufficient interest in the action to permit his intervention. Buck was later distinguished by the Appellate Division in Matter of Kay v Board of Higher Educ. (supra) where the Court found no capacity of a Trustee of the Board of Higher Education to challenge the Board’s decision not to grant a position to Bertram Russell, on the grounds that the Comptroller in Buck had the obligation to pay the judgment or to be sued. That distinction is not relevant here.
This court has little doubt that the Comptroller’s ability to bring an action to enforce a settlement is necessarily implied by his power to agree to the settlement in the first place. The position taken by the Corporation Counsel led to the result that a settlement can be negated simply by his discretionary act of refusing to enforce it. Of what value, then, would the *473 Comptroller’s insistence on the inclusion of certain settlement terms be? If the Corporation Counsel can, by refusal to insist on enforcement of a settlement, supersede the Comptroller, there is no substance to the Charter’s requirement that the Comptroller’s approval of settlements in favor of the City is necessary. There is nothing in the history of the current Charter which suggests that the power of the Comptroller should be limited with respect to the ability to adjust and settle claims against the City. Indeed the language of section 394 (c) was slightly strengthened to limit the Corporation Counsel’s power to resolve matters without the Comptroller’s approval. The very nature of the checks and balances built into the Charter is that settlement of claims by or against the City require the approval of both the elected Comptroller and the mayoral official, the Corporation Counsel (see, Walentas v New York City Dept. of Ports, 167 AD2d 211).
Since it cannot successfully be argued that the MOU could be changed without the agreement of the Comptroller, the alleged effort by defendants and the Corporation Counsel to obtain the same result cannot be countenanced. The court can discern no method of preventing the Corporation Counsel from unilaterally whittling away the Comptroller’s Charter-given powers other than to permit the Comptroller to sue to enforce the agreement. The court notes that the effect of the Corporation Counsel’s decision not to act has been the attempt to have the City pay the State $40 million without the Comptroller’s approval. While at this stage of this case the court has no views on whether there was actually a breach of the MOU or the remedy if there were a breach, the Comptroller is entitled to his day in court to ensure compliance with the agreement. This is even more significant here because the record before the court shows that the Comptroller made very specific demands which were allegedly agreed to by both sides before he gave the necessary approval.
Defendants contend that they should not be involved in an internecine war between two City officials. Suffice it to note that the complaint alleges that the then-Governor specifically agreed to the Comptroller’s conditions and there is nothing unfair or improper in holding the current administration to that contract.
The court finds that plaintiff has capacity to maintain this action in his own name.
Defendants contend that since the MOU was part of the settlement in the Court of Claims, this matter should be *474 resolved there. There is no doubt that the MOU was not part of a Court of Claims decision or part of an order of the court. Rather the Judge specifically noted that this was a voluntary discontinuance of the matter over which he had no say. 'T remind them [the parties] that since it is done in open Court it is binding upon them. But I have no power to approve, disapprove. And so I make no comment on it.” Upon the filing of the stipulation of discontinuance with prejudice, there was nothing pending in the Court of Claims. Plaintiff is seeking a declaration of a breach of the MOU and the enforcement of those terms that are capable of enforcement (since the defendants had allowed the time to expire and have apparently repaid the $80 million to the Federal Government).
The law is well settled that a stipulation of discontinuance is itself a binding contract between the parties and is enforceable by them (Babiarz v Gasparini, 198 AD2d 608, 609; Bond v Bond, 260 App Div 781, 782). Defendants cite no case for the proposition that the contract resulting from a stipulation of discontinuance may be enforced only in the court where the original action was pending. Rather defendants rely on the line of cases that hold that an application for relief from "a judgment or order” must be made in the court which made the order (e.g., CPLR 5015 [a]; Matter of Dondi v Jones, 40 NY2d 8, 15). Clearly those authorities are inapposite. Plaintiff is seeking to enforce the MOU, not to vacate an order of the Court of Claims. Of course, defendant’s argument that the stipulation is in the Court of Claims files has nothing to do with the question. Indeed it is clear that the Court of Claims would not have the equitable authority to grant or deny the relief sought in this action. There is simply no reason why this action cannot be heard in this court.
Defendants seek dismissal because the declaratory and injunctive relief sought is allegedly unavailable. That is, they contend that the only remedy for a breach of the MOU would be to vacate the discontinuance of the Court of Claims cases. This court at this juncture does not have any views on whether there was a breach of the MOU agreements. Further there has been no development of the facts which would indicate what relief would be appropriate if there were a breach. It does appear, however, that a declaration of the rights of the parties under the agreement is possible (see, e.g., Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147-149). The possibility of an injunction concerning scenic easements and the like cannot be resolved now. Nor can the court determine whether the only *475 remedy would be money damages or a vacatur of the stipulation of discontinuance, both of which require Court of Claims action. It is sufficient on this motion to hold that at least some of the relief sought is possible.
The motion to dismiss is denied.