RIVERA, J. (concurring).
We have accepted the following two certified questions from the Second Circuit.
"(1) Before New York State's capacity-to-sue doctrine may be applied to determine whether a State-created public benefit corporation has the capacity ***401 to challenge a State statute, must it first be determined whether the public benefit corporation 'should be treated like the State,' [ ( Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 387, 521 N.Y.S.2d 653, 516 N.E.2d 190 [1987] ) ], based on a 'particularized inquiry into the nature of the instrumentality and the statute claimed to be applicable to it,' [ ( John Grace & Co. v. State Univ. Constr. Fund, 44 N.Y.2d 84, 88, 404 N.Y.S.2d 316, 375 N.E.2d 377 [1978] ) ], and if so, what considerations are relevant to that inquiry?; and
"(2) Does the 'serious injustice' standard articulated in [
*1244 Gallewski v. Hentz & Co., 301 N.Y. 164, 174, 93 N.E.2d 620 (1950) ], or the less stringent 'reasonableness' standard articulated in [ Robinson v. Robins Dry Dock & Repair Co., 238 N.Y. 271, 144 N.E. 579 (1924) ], govern the merits of a due process challenge under the New York State Constitution to a claim-revival statute?" ( In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 846 F.3d 58, 70 [2d Cir.2017] ).
I write separately to expand on the majority's answer to the first certified question, and to explain why, in our answer to the second question, we should expressly adopt the federal rule, according to which claim-revival statutes do not raise due process concerns unless "lapse of time has ... [ ]vested a party with title to real or personal property" ( Chase Securities Corp. v. Donaldson, 325 U.S. 304, 311, 65 S.Ct. 1137, 89 L.Ed. 1628 [1945] ).
A. First Certified Question: Exceptions to the General No-Capacity Rule
With respect to the first certified question, I agree with the majority's comprehensive and well-reasoned analysis explaining that a public benefit corporation, like a municipal or local government entity, **564 lacks capacity to sue unless the circumstances of the case support an exception to that rule. We have recognized exceptions to the capacity to sue bar where there is
"(1) an express statutory authorization to bring such a suit; (2) where the State legislation adversely affects a municipality's proprietary interest in a specific fund of moneys; (3) where the State statute impinges upon 'Home Rule' powers of a municipality constitutionally guaranteed under article IX of the State Constitution; [or] (4) where the municipal ***402 challengers assert that if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription" ( City of New York v. State of New York, 86 N.Y.2d 286, 291-292, 631 N.Y.S.2d 553, 655 N.E.2d 649 [1995] [internal quotation marks and citations omitted] ).
We have never stated that this list is exhaustive. While no "particularized inquiry" is necessary to determine whether a public benefit corporation should be treated like the State (because "for purposes of our capacity bar, every public benefit corporation is the State" [majority op. at 393, 67 N.Y.S.3d at 558, 89 N.E.3d at 1238] ), when a public benefit corporation seeks to sue the State, a court must determine whether its suit fits into one of the previously identified exceptions or some other exception deemed appropriate under the particular facts of the case. To reach that determination, a court must consider the common thread in the existing exceptions, which recognize the constitutional protections afforded state-created entities, as well as their legislative grant of authority. These exceptions are intended to ensure that state-created entities are not thwarted in achieving their constitutionally- and statutorily-mandated purposes within our democratic system of government.
The legislature may, of course, redefine, unchallenged, the powers and authority of a public benefit corporation (Black Riv. Regulating Dist. v. Adirondack League Club, 307 N.Y. 475, 487, 121 N.E.2d 428 [1954] ), even dissolve the corporation. What it cannot do is prevent the corporation from exercising its authority to fulfill its statutorily-mandated purpose in compliance with the constitution and its enabling statutes.
To determine what a public benefit corporation may do, courts must scrutinize the public benefit corporation's laws, purpose, and the constitutional and statutory scheme into which it fits. As "[g]overnmental entities ... [are] artificial creatures of statute, ... [they] have neither an *1245 inherent nor a common-law right to sue" ( Community Bd. 7 of Borough of Manhattan v. Schaffer, 84 N.Y.2d 148, 155-156, 615 N.Y.S.2d 644, 639 N.E.2d 1 [1994] ). Any capacity to challenge a state statute, then, "must be derived from the relevant enabling legislation or some other concrete statutory predicate" or, as relevant, our constitutional framework ( id. at 156, 615 N.Y.S.2d 644, 639 N.E.2d 1 ). Courts should therefore attend to the nature and purpose of the public benefit corporation seeking to bring suit, examining "the legislative [and constitutional] scheme" that encompasses it, with special attention to the public benefit ***403 corporation's "power[s] and responsibilit[ies]" ( Matter of City of New York v. City Civ. Serv. Commn., 60 N.Y.2d 436, 441, 470 N.Y.S.2d 113, 458 N.E.2d 354 [1983] ). Courts should look to the public benefit corporation's (i) organic legislation, (ii) other legislation, if any, that the corporation is charged with implementing, (iii) the public benefit corporation's "functional responsibilit[ies]" ( Community Bd. 7, 84 N.Y.2d at 156, 615 N.Y.S.2d 644, 639 N.E.2d 1, quoting Matter of City of **565 New York v. City Civ. Serv. Commn., 60 N.Y.2d at 445, 470 N.Y.S.2d 113, 458 N.E.2d 354 ), (iv) indicia of legislative intent, and (v), as relevant or implicated, the State Constitution.
B. Second Certified Question: Claim-Revival Statutes Do Not Deprive a Party of a Non-Vested Due Process Right
The second certified question asks what standard governs the constitutionality of claim-revival statutes under our State Due Process Clause. The majority reformulates this question to focus narrowly on our prior decisions in Robinson v. Robins Dry Dock & Repair Co., 238 N.Y. 271, 144 N.E. 579 (1924) and Gallewski v. Hentz & Co., 301 N.Y. 164, 93 N.E.2d 620 (1950) (see majority op. at 393-394, 67 N.Y.S.3d at 557-59, 89 N.E.3d at 1238-39). I have no disagreement with the majority's analysis of these cases. However, I would go beyond harmonizing our holdings in prior claim-revival cases and take the opportunity this question presents to state expressly that a claim-revival statute is constitutional unless it deprives a party of a vested property interest.*
The United States Supreme Court has determined that "where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the ***404 Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff [the] remedy, and divest the defendant of the statutory bar" ( *1246 Chase Securities Corp. v. Donaldson, 325 U.S. 304, 311-312, 65 S.Ct. 1137, 89 L.Ed. 1628 [1945] ). This "long[-standing] statement of the law of the Fourteenth Amendment" reflects the truism that statutes of limitations are not born of technical legal principles that underlie judicial decisionmaking, but instead are creatures of the legislature and represent policy judgments solely within the purview of elected officials ( id. at 312, 65 S.Ct. 1137 ). As the Supreme Court has explained:
"Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent **566 a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. [A party] may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control" ( id. at 314, 65 S.Ct. 1137 [citation omitted] ).
Thus, the Court has explained that "[t]he Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is the taking of life, liberty or property without due process of law ... [and], certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment" ( id. at 315-316, 65 S.Ct. 1137 [emphasis added] ).
Even under our more expansive State Due Process Clause (see e.g. People v. LaValle, 3 N.Y.3d 88, 127, 783 N.Y.S.2d 485, 817 N.E.2d 341 [2004] [gathering ***405 cases] ), we are still concerned with an actual deprivation of life, liberty or property (see N.Y. Const., art. I, § 6 ["No person shall be deprived of life, liberty or property without due process of law"] ). No such deprivation is at issue where a defendant seeks merely to cut short the time during which a plaintiff may sue. A defendant has no separate vested right in the timing of a lawsuit or the final date upon which a plaintiff may seek relief. Defendant may find it objectionable that the State Legislature saw fit to provide plaintiffs more time to pursue their remedy, but because the legislature did not violate any fundamental right of the defendant in doing so, defendant has no grounds to legally challenge the claim-revival statute.
Adopting the federal standard, which recognizes the legislature's authority to revive claims where defendant is not deprived of a vested interest, is logically, historically, and jurisprudentially sound. Besides, it would seem to operate functionally the same as the rule announced by the majority today-that a claim-revival statute does not violate due process so long as it constitutes "a reasonable response in order to remedy an injustice" (majority op. at 400, 67 N.Y.S.3d at 563, 89 N.E.3d at 1243). That rule would appear to be no barrier to enactment of claim-revival laws. The standard is easily met. It is not difficult to establish that a statute is "a reasonable response." Indeed, every time this Court has considered the issue in the past it has upheld the legislature's claim-revival statute as a proper response to the problem the legislature sought to address *1247 (see Robinson, 238 N.Y. at 280, 144 N.E. 579 ; Gallewski, 301 N.Y. at 174-175, 93 N.E.2d 620 ; Matter of McCann v. Walsh Constr. Co., 282 App.Div. 444, 450, 123 N.Y.S.2d 509 [3d Dept.1953], affd. without op. 306 N.Y. 904, 119 N.E.2d 596 [1954] ; Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 514, 541 N.Y.S.2d 941, 539 N.E.2d 1069 [1989] ; see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 846 F.3d at 69 [noting that "neither party has cited to us, nor have we found, any case in which any New York state court has struck down any statute reviving expired claims"] ).
Certainly the judiciary is not the proper body to make the hard policy decisions behind these statutes. Instead, and appropriate to its position in our democratic system of government, the judiciary will defer to the legislative determination of what constitutes an injustice precisely because "there is no principled way for a court to test whether a particular injustice is 'serious' or whether a particular class of **567 plaintiffs is blameless; [and] such moral determinations are left to the elected branches of government" (majority op. at 400, 67 N.Y.S.3d at 562, 89 N.E.3d at 1243). ***406 Just as has been true every other time the Court has considered the constitutionality of a claim-revival statute, the rule announced by the majority will result in a finding that the statute does not deprive the defendant of due process. Rather than have a court attempt to balance policy considerations that are in fact consigned to the legislature, I would resolve the question directly and recognize the obvious: unless it impinges on a separate vested property right and not merely the hope of avoiding litigation, a claim-revival statute does not violate due process, because defendant has no fundamental right to a statute of limitations in perpetuity.

As a general rule, the Court considers only those arguments raised by the parties or which arise by necessity in our analysis of the questions explicitly presented. These limitations are grounded in prudential concerns closely connected with the consideration of concrete cases and controversies. However, here we are not deciding the appeal of a case, subject to our usual jurisdictional and reviewability limitations. Instead, we are presented with a certified question from the Second Circuit, which it has invited us to reformulate as we deem appropriate. Thus, this case does not raise the usual prudential concerns that arise when we pronounce on issues not properly developed below or by the parties.
Moreover, the argument I advance here is hardly novel or in need of greater prior elaboration. As the majority's comprehensive discussion of our case law makes abundantly clear, the constitutionality of claim-revival statutes has been before us on several earlier occasions, and each time this Court has discussed the Supreme Court's Fourteenth Amendment analysis. I do no more here. We are in no way disadvantaged by deciding the applicability of the federal rule now, when it is obvious the Court is already well familiar with the issues, our constitutional standards, and the federal analysis.