Edward E. Dudley, J.
Petitioners seek an order pursuant to section 1109 of the New York City Charter directing a summary inquiry into certain official actions of the New York City Commission on Human Eights and its Chairman. Specifically petitioners want to make inquiry into an agreement between said commission and the Metropolitan Life Insurance Company, which agreement committed Metropolitan to make efforts to *207 increase the number of nonwhite and Puerto Bican tenants in Stuyvesant Town, Parkchester and Peter Cooper Village, all three of which were owned by Metropolitan at the time of the agreement. The agreement also provided that Metropolitan would keep separate files of applications for two years, including the Metropolitan interviewer’s judgment of the race or color of the applicants. Petitioners claim that said agreement is in violation of section 296 (subd. 3, par. [c]; subd. 5, par. [a], cl. [3]) of the Executive Law of the State of New York and section Bl-7.0 (subd. 3, par. [c]; subd. 5, par. [a], cl. [3]) of the Administrative Code of the City of New York. The said sections, inter alia, forbid an owner or person in charge of selling, renting, or leasing housing accommodations to make inquiry or keep records of applicants based on race, creed, color or national origin.
The circumstances leading up to the agreement dated July 15, 1968 as found in the affidavit of the Commissioner are as follows: An investigation of the renting practices of Metropolitan revealed that of approximately 18,400 tenants to whom Metropolitan had rented apartments in Parkchester since its opening, only 25 had been rented to Negroes or Puerto Bicans. Fewer than 10 of 2,495 apartments in Peter Cooper Village were occupied by Negroes or Puerto Bicans as of May, 1968. In Stuyvesant Town fewer than 50 of 8,750 accommodations were occupied by Negroes or Puerto Bicans in May of 1968, After this investigation the commission on May 27, 1968 filed a complaint, pursuant to section Bl-8,0 of the Administrative Code of the City of New York against Metropolitan Life Insurance Company and Biverton Bedevelopment Corporation' alleging certain discriminatory practices with respect to housing' accommodations. In an affidavit by an official of Metropolitan, in which Metropolitan takes no position on the relief requested by the petitioners here, Metropolitan vigorously denies any discriminatory practice, nor is it possible or necessary to the disposition of this application to pass upon the factual validity of those allegations. After the filing of the said complaint, conciliation procedures were held pursuant to section Bl-8.0 (subd. 2, par. [a]) of the Administrative Code and these led to the July 15 agreement.
The commission advances three arguments in opposing the relief requested here. First, it argues that section 1109 of the Charter confers no jurisdiction on the Supreme Court to declare any portion of the agreement unlawful or to enjoin its execution. Secondly, it argues that the petitioners lack standing to demand the relief requested. Finally, it argues that the agreement and *208 practices called for therein are reasonably related to the purposes and work of the commission. In the view we take here, it is unnecessary to determine the validity of the first and second arguments.
Section 1109 of the Charter permits the Supreme Court to order a ‘ ‘ summary inquiry into any alleged violation or neglect of duty in relation to the property, government or affairs of the city”. Under certain circumstances the application to the Supreme Court can be made by ‘ ‘ any five citizens who are taxpayers,” and petitioners contend that they meet the required tests. The court may order persons to attend the inquiry, which is subsequently reduced to writing and filed with the County Clerk. The granting of an order for a summary inquiry is purely within the discretion of the court.
Since petitioners ’ papers reveal no 1 ‘ violation or neglect of duty ” on the part of the commission or its Chairman, they are defective on their face and a summary inquiry must he denied. Section 1109 was not intended to be used to thwart public officials who are reasonably and conscientiously performing their duty. Petitioners’ argument, succinctly stated, is that the keeping of racial records pursuant to the agreement here is unlawful. This argument overlooks the purpose of the legislation which includes the elimination of discrimination in housing accommodations. (See Administrative Code, § B 1-1.0.) It is difficult to see how any better means could be used by the commission to carry out this purpose. Moreover, where, as here, the facts are undisputed, an inquiry would serve no purpose.
Accordingly, in the exercise of discretion, the application is denied.