OPINION OF THE COURT
Edward H. Lehner, J.
The central issue posed herein is whether petitioner, in his capacity as Public Advocate for the City of New York, is *402 entitled to review files of the Police Department in disciplinary cases where the Civilian Complaint Review Board (CCRB) "substantiated” complaints against police officers.
In the petition it is asserted that between one third and one half of all cases in which the CCRB substantiated a claim of police misconduct, the officer involved received no disciplinary action. The CCRB is an independent city agency established pursuant to section 440 of the New York City Charter (the Charter) to investigate public complaints of police misconduct. Petitioner alleges that in the past three and a half years he has received numerous complaints from residents of all five boroughs regarding misconduct and abuse by police officers, including complaints with respect to the failure of the City Police Department (NYPD) to impose discipline against officers whose actions resulted in charges being substantiated by the CCRB.
Petitioner maintains that under the Charter he has an obligation to determine "the effectiveness of City agency responses” and "ascertain whether the NYPD’s failure to prosecute and/or impose discipline against misbehaving officers is indicative of systemic problems in the response to complaints” (paras 19, 21). In his memorandum of law, petitioner poses the issue he wishes to investigate in the following manner (at 24): "Has our police force — which we hail as effective and aggressive — become unable or unwilling to discipline its own members when they misbehave? Or has the much-debated all-civilian CCRB grown too credulous of citizen complaints?”
Section 24 (f) (2) of the Charter states that the Public Advocate shall "review complaints of a recurring and multiborough or city-wide nature relating to services and programs, and make proposals to improve the city’s response to such complaints”. Based on this provision, petitioner seeks access to case files on actions taken by the NYPD between January 1, 1995 and December 31, 1996 "on 'substantiated’ CCRB complaints referred to the Police Commissioner pursuant to Section 440 (c) of the Charter [and] on cases of potential NYPD discipline initiated by the NYPD’s Internal Affairs Division and or Advocate’s Office on the basis of complaints by members of the public”. Petitioner acknowledges that any access to the files will be "subject to redaction of the names of the subject police officers”.
Although petitioner submits an application he made for the requested files under the Freedom of Information Law (Public Officers Law art 6), at oral argument it was stated that relief herein is not being sought under such law.
*403 Respondents oppose the petition arguing that (i) the court lacks jurisdiction "because petitioner has failed to exhaust his administrative remedy under New York City Charter §24 (j)”; (ii) "the records petitioner seeks do not relate to any of petitioner’s Charter-mandated functions”; (iii) "petitioner lacks the capacity to bring this proceeding”, and (iv) "the records petitioner seeks are confidential under Civil Rights Law §50-a (1)” (respondents’ mem of law, dated June 12, 1997, at 2).
Discussion
The Office of Public Advocate was created pursuant to the Charter revision of 1989. Although initially established as a continuation of the Office of the President of the City Council, in 1993 the title of the Office was changed to Public Advocate (Local Laws, 1993, No. 19 of City of New York). While many communities may have officers who perform functions similar to those vested in the Public Advocate, the position as an independently elected office can be said to be unique to New York City.
From the proceedings of the Charter Revision Commission (the Commission), it is evident that the intent of the Commission was to make the Public Advocate a "watchdog” over City government and a counterweight to the powers of the Mayor. While it appears that the Commission considered the issue of granting the Public Advocate subpoena power, no such authority was granted even though this power is possessed by the Commissioner of the Department of Investigation (Charter § 805) and the Commissioner of the Department of Consumer Affairs (Charter § 2203). The vision of the office was an independent public official to monitor the operations of City agencies with the view to publicizing any inadequacies, inefficiencies, mismanagement and misfeasance found, with the end goal of pointing the way to right the wrongs of government.
Misconduct by those invested with police power is now, and always has been, an area of concern to government. Here the petitioner is seeking to review files of the NYPD to determine whether any patterns exist to the decisions of its Commissioner with respect to police discipline. He is not seeking to resolve individual complaints as he clearly lacks authority to do so as such matters are clearly those which "another city agency is required by law to adjudicate” (Charter § 24 [f] [4] [i]). That one third to one half of CCRB "substantiated” complaints resulted in no discipline is a legitimate area for study by petitioner to determine why such a result ensued *404 with the possibility of recommendations for changes in the operation of the CCRB and/or the NYPD. Accordingly, I find that an examination of the files sought is within the purview of the powers and duties of petitioner.
With this finding in mind, the next issue presented is whether access to the files is barred by subdivision (1) of Civil Rights Law § 50-a. That provision states that police personnel records "shall be considered confidential and not subject to inspection or review without the express written consent of such police officer * * * except as may be mandated by lawful court order”. However, subdivision (4) of that section provides that the above-quoted provision shall not apply to "any agency of government which requires the records * * * in the furtherance of their official functions”.
Since I have concluded that review of the files for the reasons aforesaid is in "furtherance” of petitioner’s "official function”, the provisions of this section are not a bar to the relief requested. Petitioner has agreed that if the files are made available, respondents may redact the names of police officers involved, and I would add that not only should the names be redacted but, to insure the confidentiality intended by the statute, any other information that would tend to identify the officer involved should also be redacted. In this connection, see Heard v Cuomo (142 AD2d 537 [1st Dept 1988]), where, notwithstanding the mandate for the confidentiality of records of patients of mental health facilities set forth in Mental Hygiene Law § 33.13 (c), the Court required the disclosure of a number of "carefully redacted” patient discharge plans, finding that "there is a legitimate public interest in information regarding the procedures for the release and aftercare of mental patients” (at 539). There is similarly a valid public interest in disciplinary procedures of the NYPD.
On the defense of the "exhaustion of administrative remedies”, respondents point to Charter § 24 (j), which provides in part: "The public advocate shall have timely access to those records and documents of city agencies which the public advocate deems necessary to complete the investigations, inquiries and reviews required by this section. If a city agency does not comply with the public advocate’s request for such records and documents, the public advocate may request an appropriate committee of the council to require the production of such records and documents pursuant to section twenty-nine of the charter”.
Respondents’ assertion that this proceeding must be dismissed for failure of petitioner to apply to a City Council Com *405 mittee for the issuance of a subpoena lacks merit. This subdivision is clearly permissive and there is nothing to indicate that application to the City Council is the exclusive means by which the Public Advocate can obtain data denied him by a City agency. The City Council is not an adjudicatory body. It, as the separate legislative branch of government (sometimes aligned with a Mayor and other times opposed), was not intended by the Commission to be the arbiter of disputes between two other independently elected City-wide officials. Rather, the procedure set forth in subdivision (j) is one whereby the Public Advocate (denied subpoena power under the Charter) can obtain the assistance of a Council Committee in the performance of the monitoring and reviewing obligations set forth in Charter § 24. It is noted that the City Council has submitted an amicus curiae memorandum in support of petitioner’s position. To interpret subdivision (j) as urged by respondents would allow the Council to stymie an investigation which, if the Mayor and the Council were politically aligned together against the Public Advocate, could prevent the designated City "watchdog” from performing any true investigation of abuses in government.
Lastly, the respondents raise the issue as to whether petitioner has the capacity to sue. In his letter to petitioner dated March 21, 1997, the City Corporation Counsel flatly states that the "Charter does not authorize the Public Advocate to sue”. However, acknowledging that the corporation counsel had this year commenced a proceeding on behalf of the Public Advocate in Albany County under the Freedom of Information Law (index No. 1746/97), respondents state (reply mem, dated July 31, 1997, at 3) that it "is not respondents’ position that petitioner can never bring a proceeding in his official capacity to enforce his Charter-mandated powers”, but rather that he "lacks the capacity to sue to obtain access to the records he sought”. Thus, in essence, it appears that on the question of the capacity to sue, all respondents are now arguing is that petitioner is not entitled to the records sought herein.
On the issue of the right of a government official to institute litigation, the Court in Community Bd. 7 v Schaffer (84 NY2d 148 [1994]) set forth the following (at 156): "In a recent discussion on the subject, Matter of City of New York v City Civ. Serv. Commn. (60 NY2d 436), we considered both the standing and the capacity of a governmental agency to bring an article 78 proceeding against another governmental entity. With respect to the capacity question, we stated that the authority of *406 a government agency to bring suit does not require 'that in every instance there be express legislative authority’ (id., at 444-445). Rather, the capacity to sue may also be inferred as a 'necessary implication from [the agency’s] power[s] and responsibilit[ies], ’ provided, of course, that 'there is no clear legislative intent negating review’ (id., at 443, 444). The Court indicated in City of New York that the power to bring a particular claim may be inferred when the agency in question has 'functional responsibility within the zone of interest to be protected’ (id., at 445)”. Here I find that the right to bring suit to implement the power set forth in the Charter, even though not specifically set forth therein, is implied from the functional responsibility of petitioner to perform the tasks referred to above.
Accordingly, the petition for access to the requested records is granted.