In the Matter of MADISON SQUARE GARDEN, L.P., Appellant, v NEW YORK METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents. In the Matter of BETSY F. GOTBAUM, as Public Advocate for the City of New York, Appellant, v NEW YORK METROPOLITAN TRANSPORTATION AUTHORITY, Respondent. In the Matter of WALTER MANKOFF et al., Appellants, et al., Petitioners, v NEW YORK METROPOLITAN TRANSPORTATION AUTHORITY, Respondent. In the Matter of NEW YORK PUBLIC INTEREST RESEARCH GROUP/STRAPHANGERS CAMPAIGN, INC., et al., Appellants, v NEW YORK METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents. [799 NYS2d 186]—

Judgment, Supreme Court, New York County (Herman Cahn, J.), entered June 2, 2005, which denied four petitions and dismissed the corresponding proceedings brought pursuant to CPLR article 78 to annul the determination of respondent New York Metropolitan Transportation Authority (MTA) selecting Jets Development, LLC to develop the area known as the John D. Caemerer West Side Yards, unanimously affirmed, without costs.

The Public Advocate was without capacity to bring a proceeding challenging the disputed MTA determination (*see Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155-156 [1994]). Her duty is to be "a 'watchdog' over City government" (*Matter of Green v Safir*, 174 Misc 2d 400, 403 [1997], *affd in relevant part* 255 AD2d 107 [1998], *lv denied in part and dismissed in part* 93 NY2d 882 [1999]; *see also* NY City Charter § 24 [f]; § 1109), but the MTA is not part of city government (*see e.g. Matter of New York Post Corp. v Moses*, 10 NY2d 199, 204 [1961]).

The *Mankoff* petitioners lack standing because they do not fall within the zone of interest protected by Public Authorities Law §§ 1264, 1265 and 1267 (*see e.g. Matter of Sun-Brite Car*

*Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406 [1987]). Even if these petitioners live in close proximity to the site at issue, that has nothing to do with whether the MTA received the highest price for the site; rather, their interests as the site's neighbors are tied to environmental impacts such as congestion and air pollution. Those interests are being adequately protected in a separate lawsuit.

The nonprofit petitioners in *Straphangers* cannot sue under State Finance Law § 123-b (1) because they are not taxpayers (*see e.g. Weimer v Board of Educ. of Smithtown Cent. School Dist. No. 1,* 52 NY2d 148, 153 n 3 [1981]; *Matter of Sullivan v Siebert,* 70 AD2d 975 [1979]). The individual petitioners in *Straphangers* cannot sue the MTA under State Finance Law § 123-b (1) because the MTA is separate from the State (*see e.g. New York Post Corp.,* 10 NY2d at 203-204; *Matter of Lancaster Dev., Inc. v Power Auth. of State of N.Y.,* 145 AD2d 806 [1988], *lv denied* 74 NY2d 612 [1989]). Petitioners lack common-law taxpayer standing because they "do not seek review of any legislative action," and "no 'impenetrable barrier' exists" to judicial scrutiny (*Matter of Transactive Corp. v New York State Dept. of Social Servs.,* 92 NY2d 579, 589 [1998]; *see Boryszewski v Brydges,* 37 NY2d 361, 364 [1975])—the unsuccessful bidder can bring, and has brought, suit.

In *Straphangers,* the individual users of mass transit, the organizations representing such users, and the union representing the MTA's employees lack standing because the injuries they fear (e.g., fare hikes and/or job losses) are not "actual or imminent" (*Lujan v Defenders of Wildlife,* 504 US 555, 560 [1992]), the link between those injuries and the MTA's acceptance of the Jets' proposal is too attenuated (*id.*), and it is speculative rather than likely that those future injuries will be redressed by annulling the MTA's selection of the Jets (*id.* at 561).

Turning to the *Madison Square Garden* (MSG) petition, it is true, of course, that the MTA must treat bidders fairly (*see e.g. Matter of Tri-State Aggregates Corp. v Metropolitan Transp. Auth.,* 108 AD2d 645, 646 [1985]). However, MSG was not treated unfairly. A request for proposals (RFP) need not spell out every single factor (*see Matter of Transactive Corp. v New York State Dept. of Social Servs.,* 236 AD2d 48, 53 [1997], *affd* 92 NY2d 579 [1998]). Furthermore, "[t]here exists no legal requirement . . . that the final contracts must conform to the original RFP" (*Starburst Realty Corp. v City of New York,* 131 Misc 2d 177, 186 [1985]). An RFP is a more flexible alternative to competitive bidding (*see e.g. Jo & Wo Realty Corp. v City of New York,* 157 AD2d 205, 212 [1990], *affd* 76 NY2d 962 [1990]).

The MTA was not obligated to accept MSG's proposal because it offered more cash up front (*see e.g. Jo & Wo*, 157 AD2d at 210, 226; *Matter of New City Jewish Ctr. v Flagg*, 111 AD2d 814 [1985], *affd* 66 NY2d 980 [1985]).

While MSG's purportedly inadequate provision of space for the Quill Bus Depot was an improper post hoc rationalization for the challenged MTA determination (*see e.g. Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal*, 283 AD2d 284, 288 [2001]), the other factors raised by the MTA in this proceeding were mentioned at the March 31, 2005 board meeting and did constitute the reasons for the determination. Inasmuch as the determination had a rational basis, it should not be disturbed (*see e.g. Municipal Testing Lab., Inc. v New York City Tr. Auth.*, 233 AD2d 105 [1996]).

We have considered petitioners' remaining arguments and find them unavailing. Concur—Andrias, J.P., Marlow, Sullivan, Ellerin and Nardelli, JJ. [*See* 7 Misc 3d 1030(A), 2005 NY Slip Op 50824(U) (2005).]