OPINION OF'THE COURT
Alice Schlesinger, J.
Before this court is a plea to help children, disabled children who attend public schools in District 75 in all the five boroughs of the City. The help petitioners are requesting is relatively straightforward. As articulated by one of them, Catherine Boward-Simone, mother of a 10-year-old autistic child, R.S.,* in the last paragraph of her affidavit of August 17, 2015:
“On behalf of my child and others, I ask the Court to order the Department of Education to immediately provide air conditioning and a safe bus ride to and from school for my child and establish a system for ensuring, my child nor any child is harmed by excessive heat.”
The three petitioners are Catherine Boward-Simone, Ms. Robin Ponsolle, mother of autistic child, C.P., and Letitia James, the Public Advocate for the City of New York. They are asking relief from respondents City of New York, the City’s Department of Education and the Department’s Chancellor, Carmen Farina. The specific relief they are requesting is first a declaration that respondents have violated Administrative *823 Code of the City of New York § 19-605 (a) and the New York City Human Rights Law, Administrative Code § 8-101 et seq. From there they are asking, the court to direct the respondents to immediately enforce Administrative Code § 19-605 (b) by providing functioning air-conditioned buses for children with disabilities who attend New York City public schools, and to direct respondents further to enforce Administrative Code § 19-605 (b) by establishing adequate systems to monitor all bus companies’ performance under their contracts, to ensure that disabled children are riding in air-conditioned buses when the ambient temperature is above 70 degrees. Also, they want a further direction that respondents immediately enforce Administrative Code § 19-605 (b) by penalizing the bus companies, presumably for violating the terms of their contracts. Though it should be noted, no bus companies have been named as a party. Finally, as to the children R.S. and C.P., actual damages, punitive damages and reasonable attorneys’ fees and costs pursuant to Administrative Code § 8-502 are requested.
The respondents have not answered. Instead they have cross-moved to dismiss the petition. They do this for 10 distinct reasons. With the exception of their second ground “(2) lack of capacity of petitioner James,” the other grounds, for the most part, argue that the City should not be continued as a party. In other words, that because of “(1) no implication of the City by any of the causes of action,” this respondent should have its motion granted in all respects.
There is opposition to this cross motion in the form of legal arguments by petitioners. However, as to one of the grounds, (6) “failure to serve a notice of claim by the two student petitioners,” the opposition there takes the form of a request to file a late notice of claim under Education Law § 3813 (1), a request opposed by respondents.
I will first discuss and decide whether Advocate James has the capacity to sue, since if that aspect of the motion were to be granted, it would have significant consequences, since it is questionable whether the children’s mothers have the legal right, as argued by the respondents, to sue on behalf of anyone other than themselves. So if the decision as to her capacity is adverse to Ms. James, this suit will be materially diminished. But, since for reasons to follow, I find that she does, in fact, have the requisite capacity, the matter will continue with its present vitality.
*824 Capacity to sue, to enter a courtroom with the hope of obtaining specific relief, is not a right that every individual or entity has. Although it is a concept often allied with that of standing, it is distinct from it (Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148 [1994]). That Court dealt with standing, a matter this court will deal with later in this decision, in characterizing it as a means to “ensure that the party seeking relief has a sufficiently cognizable stake in the outcome so as to cast[ ] the dispute in a form traditionally capable of judicial resolution” (84 NY2d at 155). It “is an element of the larger question of justiciability” (84 NY2d at 154).
But capacity to sue concerns one’s ability or power to appear and bring a grievance before the court. (84 NY2d at 155.) So that in the opinion now being referenced, Community Board 7 was found not to possess such an ability. Therefore, that entity was denied access to certain documents which it wanted in connection with its responsibility to study and make recommendations as to a proposed land development in its district.
The Court distinguished the Community Bd. 7 dispute with an earlier decision of its, Matter of City of New York v City Civ. Serv. Commn. (60 NY2d 436 [1983]), wherein the Court found that the Personnel Director of the City had the power to successfully bring and challenge, in a CPLR article 78 petition, a decision by the New York City Civil Service Commission, as to whether police officers who were Armed Forces reservists were entitled to veterans’ preference credits giving them higher scores on a promotional examination when they were called to serve, filling in for striking postal workers, but were dismissed from this assignment without being used at all. The Commission found that they were so entitled to receive these preference credits but petitioner Personnel Director believed otherwise.
As pointed out in the Community Bd. 7 decision, even though in the earlier Civil Serv. case, there was no clear legislative intent one way or the other for the Personnel Director to sue, such a power could be “inferred when the agency in question has functional responsibility within the zone of interest to be protected.” (84 NY2d at 156.)
Judge Kaye, writing for the Court in the Civil Serv. case, noted that it was the petitioner who had been “assigned the power and responsibility to set civil service policy in New York City, to enforce the civil service laws, and to assure the legality of appointments” (60 NY2d at 441). The Commission had none of these duties. Therefore, the Court found that it was the *825 Personnel Director, rather than the Commission, that had both policy-making authority and functional responsibility for civil service matters in New York City. Having such authority and responsibility gave the Personnel Director the right to come to court and ask for article 78 relief.
In Community Bd., while Board 7 may have had some functional responsibility within the sphere of development planning, its lack of capacity to bring the suit was readily “inferred from the terms and history of its own enabling legislation, as well as from its limited role in the land use planning process.” (84 NY2d at 157.) The Court then explored that legislative history, specifically of the New York City Charter revision process and noted that while the right to sue by community boards was discussed, it was not included in either the Commission’s Preliminary Recommendations or in the final proposed Charter amendments.
What is the situation here? Respondents point out that the Public Advocate also was never given any explicit rights to sue. But as then noted by Ms. James, no part of the Charter withheld such a power.
Two First Department opinions give further insight into this issue. The earlier one, Matter of Green v Safir (255 AD2d 107 [1998]), supported the Public Advocate’s petition to compel the Police Commissioner to provide it with access to all substantiated Civilian Complaint Review Board records for a specified period. While in Matter of Madison Sq. Garden, L.P. v New York Metro. Transp. Auth. (19 AD3d 284 [2005]) the Court found the Public Advocate was without capacity to bring a proceeding challenging a disputed Metropolitan Transportation Authority determination.
A review of these cases convinces me that the reasoning and rationale in Green v Safir is much closer to the present controversy and thus should have the same resolution. This is because its basis lies in who the Public Advocate is and what is her role and responsibility. She is a publicly elected official. It is the Charter of the City of New York that establishes her powers to review complaints relating to services and programs affecting New Yorkers. Her mandate is to investigate and try to resolve such complaints (point II at 7 of petitioners’ mem of law in opp to cross motion to dismiss). In the course of such investigations, she reports on City agency performance. (¶ 4 at 2 of James aff.) The office was created as a public “watchdog” focusing on problems the City or one of its agencies is not successfully coping with (¶ 16 of petition).
*826 Paragraphs 43 through 47 of the petition document Advocate James’ involvement in the persistent problem of the lack of adequately functioning air conditioning in buses servicing disabled public school students. This problem was first noted in 2014 and it was in that summer that Ms. James first notified the Department of Education (DOE) of the problem, which she characterized as “serious, systemic, and needed to be remedied” (¶ 43). The Public Advocate told DOE of the problem and of the many complaints her office had received regarding this issue. She also asked for a number of relevant documents which she asserts she never received. She offered to work with DOE toward resolving the problem. That offer was also not embraced (¶ 46). And many of the buses transporting these children were still not functioning through the summer of 2015. The petition cites to Administrative Code § 19-605 which mandates that air conditioning be provided to children with disabilities. Administrative Code § 6-102 requires the City to ensure the compliance of bus drivers to fulfill their contractual obligations to so provide. The Public Advocate is seeking aid from the court to fix this serious problem.
The trial court in Matter of Green v Safir (174 Misc 2d 400 [1997]) pointed out why the Public Advocate was seeking to review files of the New York Police Department (NYPD) to determine whether any patterns existed to the decisions of its Commissioner with respect to police discipline. The reason for this request was the disconnect between Civilian Complaint Review Board findings of police misconduct and the fact that between one third and one half of those cases led to no disciplinary action taken against the police officers involved. Public Advocate Green argued he had an obligation to determine “the effectiveness of City agency responses” and “ascertain whether the NYPD’s failure to prosecute and/or impose discipline against misbehaving, officers is indicative of systemic problems in the response to complaints.” (174 Misc 2d at 402; ¶¶ 19, 21 of petition.) The court agreed that he should have this access, finding that this was a legitimate area for study by petitioner and that examination of the files sought was within the purview of his powers and duties (174 Misc 2d at 403). The Appellate Division agreed (255 AD2d 107).
Similarly, this court here finds that the Public Advocate’s mandate would include an obligation to explore a serious health problem affecting disabled children of the City and attempt, with the help of the court, to remedy that problem. Thus, I find capacity for Ms. James to pursue this proceeding.
*827 However, I do not find that the City of New York is a viable party/respondent. Although certainly DOE is, as for the most part, it has not argued otherwise. First, the City is not implicated in the claimed violations. It is my understanding that it is DOE that has contracted with the bus companies and arguably has a responsibility to make sure there is compliance. That is what the Public Advocate is asking for. Further, similar to the result and reasoning in the trial court’s decision in Matter of Montgomery-Costa v City of New York (26 Misc 3d 755 [2009]), the City and the Board of Education (a named party) are separate legal entities. That is the situation here.
Finally is the issue of whether the two children’s claims brought by their mothers are viable and if they are, how extensive are those claims. First, I agree with respondents that the students do not have standing to represent a larger group. But they can make and assert claims on their own behalf. Second is the issue of the failure to make a claim for monetary damages without first serving a notice of claim. That lack has led to the motion on behalf of these petitioners to file a late notice of claim pursuant to section 3813 of the Education Law, a motion opposed by respondents.
On the merits in exercising my discretion, I would be inclined to grant this relief. But the opposition points to several procedural problems with the parents’ moving papers. For example, the mothers want me to allow the affidavits they filed with the petition to serve as their notices. I decline to do this. The required notices must be in the form set out in the statute pursuant to Education Law § 3813. That makes it clear what has to be asserted as the details of the claims, as well as the specifics of the claimed damages. Respondents complain that the affidavits lack clarification as to these details. This court agrees. Therefore at this time, I will deny these petitioners’ request to file a late notice of claim but without prejudice to file another motion which includes proper notices of claims as to monetary damages. If petitioners wish to pursue this, they are directed to bring on such a motion within 40 days of the date of this decision.
In summary, I find the Public Advocate does have the capacity to bring this proceeding and request the relief asked for, but not against the City. One further point, not earlier discussed, is the failure to name the bus companies as parties here in the contract with DOE. To the extent money damages are claimed, with proper notices, those companies are neces *828 sary parties and should be joined, pursuant to section 1001 (a) of the CPLR.
Assuming the mothers bring a second motion, respondents should file their answer within 30 days of the court’s decision on that motion.
It is thus ordered and adjudged that respondents’ cross motion to dismiss is granted in part to the extent set forth in the memorandum decision. It is further ordered that petitioners’ motion for leave to file a late notice of claim is denied without prejudice in accordance with the memorandum decision.

 The petition was filed in August of 2015 and heard before this court in October. Since that time, counsel for the parties have been seriously engaged in settlement discussions and have asked the court to forestall deciding the motions before it. Unfortunately, they have so far not been successful and so have requested the court to resolve those pending motions. It is now mid to late August of 2016. The above is to note that as time marches on for all of us, R.S., one can assume, is now 11.